**REVISED**

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

———————————————

No. 95-20983

———————————————

UNITED STATES OF AMERICA,

Plaintiff-Appellee-Cross-Appellant,

versus

REYNALDO MARMOLEJO,

Defendant-Appellant-Cross-Appellee.

———————————————

Appeal from the United States District Court
for the Southern District of Texas

———————————————

February 21, 1997

Before HIGGINBOTHAM, SMITH, and EMILIO M. GARZA, Circuit Judges.

HIGGINBOTHAM, Circuit Judge:

Reynaldo Marmolejo appeals his convictions under 21 U.S.C. § 846, 18 U.S.C. § 371, and 18 U.S.C. §§ 201(b)(2) & 2, urging that they are not supported by sufficient evidence. The government cross-appeals the sentence given to Marmolejo claiming that the district court erred in failing to enhance Marmolejo's sentence for possession of a firearm and in reducing his sentence for acceptance of responsibility and being a minor participant. We reject Marmolejo's contentions and, finding merit in the government's contentions, vacate Marmolejo's sentence and remand to the district court for sentencing consistent with this opinion.

Reynaldo Marmolejo, a former INS agent, was indicted and convicted for his role in transporting drugs for the Juan Garcia Abrego organization. In 1986, the Ortiz cell of the Abrego organization began transporting drugs across the border in INS buses and vans used to transport undocumented aliens detained in Bayview, Texas to Houston for deportation hearings. The INS vehicles were not searched at the immigration checkpoint in Sarita, Texas and were manned by armed INS agents. This was therefore an easy way to transport the drugs, if there were INS agents willing to stop their vehicle for loading and unloading of the contraband.

Joe Polanco and Mario Santana, former INS agents, admitted to transporting marijuana and cocaine in INS vehicles. As part of their plea bargains with the government, they agreed to testify against Marmolejo at his trial. They both testified that he knew that drugs were being transported in the INS vehicles and that he agreed to transport drugs for a cash payment. Specifically, they testified that Marmolejo was present at and assisted in the transport of approximately 200 kilograms of cocaine on January 26, 1990. Santana originally implicated Marmolejo in a statement given to FBI Special Agent Kim Woxman. When Marmolejo discovered that Santana had confessed, he suggested that Santana get a lawyer and feign mental illness in order to suppress his statement to Agent Woxman.

The jury found Marmolejo guilty of conspiracy to possess with intent to distribute cocaine and marijuana, in violation of 21

U.S.C. § 846, conspiracy to commit money laundering, in violation of 18 U.S.C. § 371, and aiding and abetting in the bribing of a public official, in violation of 18 U.S.C. §§ 201(b)(2) and 2. The presentence investigation report found that Marmolejo had transported 200 kilograms of cocaine and gave Marmolejo a base offense level of 38. The report recommended increasing the base level because Marmolejo: 1) carried a gun during the transport; 2) abused his position of public trust; and 3) obstructed justice by trying to persuade Santana to lie.

Marmolejo objected to the enhancement based on obstruction of justice and possession of a firearm. He further claimed that he should be entitled to a reduction of his base offense level because he admitted involvement in the crimes to the probation officer and he was only a minor participant in the conspiracy. The district court declined to enhance Marmolejo's sentence based on possession of a firearm and reduced his sentence for acceptance of responsibility and minor participation. The district court also found that Marmolejo obstructed justice and abused his position of trust and enhanced his sentence based on those provisions. Marmolejo's total offense level was 38 and he was sentenced (within a range of 235-293 months) to 238 months in prison.

## II.

Marmolejo challenges the sufficiency of the evidence against him. The government claims that the evidence was sufficient and that the district court failed to enhance Marmolejo's sentence for possession of a firearm and erroneously reduced Marmolejo's

3

sentence for acceptance of responsibility and participation in a minor role. We will consider Marmolejo's argument first and then turn to the government's contentions.

## A.

Marmolejo claims that the evidence was insufficient to support his conviction because the only witnesses who testified to his direct involvement in the conspiracy were Polanco and Santana. He claims that because they were co-conspirators who had cut deals with the government, their testimony was so suspect that it could not support his conviction. Marmolejo's sufficiency argument fails. A conviction may rest solely upon the uncorroborated testimony of an accomplice if that testimony is not insubstantial on its face. United States v. Gibson, 55 F.3d 173, 181 (5th Cir. 1995).

## B.

The government claims that Marmolejo's weapon, carried as a requirement of his job as an INS agent, should have been the basis for enhancement under U.S.S.G. § 2D1.1(b)(1). Possession of a firearm will enhance a defendant's sentence under U.S.S.G. § 2D1.1(b)(1) where a temporal and spatial relationship exists between the weapon, the drug-trafficking activity, and the defendant. United States v. Eastland, 989 F.2d 760, 770 (5th Cir. 1993), cert. denied, 114 S. Ct. 246 (1994)(citing United States v. Hooten, 942 F.2d 878, 882 (5th Cir. 1991)). This enhancement provision will not apply where the defendant is able to show that

it is "clearly improbable" that the weapon was connected with an offense.  U.S.S.G. § 2D1.1 n.3.

The district court declined to enhance Marmolejo's sentence for possession of a firearm because he did not display or brandish the firearm.  However, this circuit has not required active use of a firearm for enhancement.  In United States v. Otero, 868 F.2d 1412 (5th Cir. 1989), this court upheld enhancement where a defendant had a gun in his van while delivering drugs.  The court found that possession of a gun was sufficient for enhancement under § 2D1.1(b)(1).  Otero, 868 F.2d at 1414.  On appeal, Marmolejo admits that he possessed a firearm while escorting the cocaine shipment but claims that because he was required by his job to carry a firearm, the firearm was not connected to the offense.

The precise question of whether Marmolejo's sentence can be enhanced where he possessed a gun as part of his employment as an INS agent has not been confronted by this circuit in a published opinion.[1]  Contrary to Marmolejo's assertion, the court in United States v. Siebe, 58 F.3d 161 (5th Cir. 1995), did not consider whether an officer's gun can be used to enhance under § 2D.1.(b)(1).  The district court in Siebe presumed that the defendant possessed a gun during the commission of a drug trafficking crime because he had been issued a firearm in his position as a law enforcement officer.  This court reversed, noting that there was no evidence that a weapon was found on the officer

---

[1] In United States v. Davenport, No. 93-1216 (5th Cir. Sept. 6, 1994)(unpublished), a panel rejected two police officers' contention that their guns could not be the basis for enhancement.

5

during the drug trafficking crime. The parties agree that Marmolejo did possess a gun while he was manning the INS van. The only question remaining is the effect upon enhancement of the fact that Marmolejo was required to carry the gun.

Under the facts of this case, we cannot say that Marmolejo has borne his burden of proving that it is "clearly improbable" that his gun was connected to his offense. Transporting drugs under the watchful eyes of armed INS agents was the 'perfect cover' for the Abrego organization. Marmolejo's position allowed him to pass undetected through INS checkpoints. That carrying a gun was an requirement of his position does not undo the benefit that drug traffickers received from having an armed guard protect their goods. Marmolejo used his position to transport drugs and therefore any incidence of that position which further facilitated the transport should properly be taken into account at sentencing. We therefore find that the district court erred in not enhancing Marmolejo's sentence under § 2D1.1(b)(1).

The government next urges that the district court erroneously reduced Marmolejo's sentence for acceptance of responsibility. To qualify for sentence reduction under U.S.S.G. § 3E1.1(a), a defendant must show "recognition and affirmative acceptance of personal responsibility for his criminal conduct." A trial court receives greater deference than usual when reducing a sentence for acceptance of responsibility under § 3E1.1, because this provision requires an assessment of credibility. United States v. Rodriguez, 942 F.2d 899, 902-03 (5th Cir. 1991), cert. denied, 502 U.S. 1080

6

(1992)(citing United States v. Mourning, 914 F.2d 699, 705 (5th Cir. 1990)). However, the notes to 3E1.1 provide guidance for the exercise of this discretion. Note 2 to 3E1.1 provides that, although a defendant may receive this reduction even if he proceeded to trial, the adjustment "is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse." Marmolejo's claim to a sentence reduction under this provision hinges on information he provided to the probation officer after his conviction and therefore he faces a considerable headwind in proving that he is entitled to the benefit of § 3E1.1(a).

Note 4 to 3E1.1 further dims Marmolejo's chance for relief. It states that where a sentence has been enhanced for obstruction of justice, very rarely will a defendant be eligible for sentence reduction under this provision. U.S.S.G. § 3E1.1 n.4 stating that adjustment under both §§ 3C1.1 and 3F1.1 may be applied in exceptional cases; see also United States v. Ayala, 47 F.3d 688, 691 (5th Cir. 1995); Rodriguez, 942 F.2d at 902. The sentencing judge enhanced Marmolejo's sentence for obstruction of justice based on Marmolejo's attempts to convince Santana to lie to the court in order to suppress Santana's statement implicating Marmolejo.

This case does not present an extraordinary circumstance that would warrant enhancement for obstruction of justice and reduction for contrition. The presentence investigation report did not

recommend reduction of Marmolejo's sentence under this provision and Marmolejo admitted to transporting cocaine only after a trial and a guilty verdict. Even in his admission of guilt, Marmolejo was less than frank. He admitted to involvement only in the January 26th transport, and claimed that Santana paid him around $9,000, not $19,000 or $13,000 as Santana testified. He also stated that he did not observe marijuana loaded onto the bus and was told that he would only be transporting marijuana. We therefore find that Marmolejo has not shown that his is one of the unusual cases where a defendant can be found to have obstructed his prosecution but also shown a sincere acceptance of responsibility for his acts.

Finally, the government argues that the district court erred in finding Marmolejo to be a minor participant under § 3B1.2(b). Marmolejo bears the burden of showing that his sentence level should be reduced under this provision. United States v. Atanda, 60 F.3d 196, 198 (5th Cir. 1995). The guidelines define a minor participant as one who is "less culpable than most other participants." § 3B1.2 n.3.

Marmolejo was an integral part of a successful conspiracy to import large quantities of drugs into the United States. The shipment that he rode with on January 26, 1990 consisted of 200-300 kilograms of cocaine. The district court calculated his base offense level using this amount, not the amount of the entire conspiracy, which the presentence investigation report estimated at 10,000 kilograms. Because only the drugs he actually participated

8

in transporting were attributed to him in calculating his sentence, he cannot now claim to be a minor participant in relation to his offense. Atanda, 60 F.3d at 199 ("when a sentence is based on activity in which a defendant was actually involved, § 3B1.2 does not require a reduction in the base offense level even though the defendant's activity in a larger conspiracy may have been minor or minimal"). Marmolejo's role may appear to be small in relation to the work of the Ortiz cell or the Abrego organization itself, however, he himself accomplished much in the way of furthering their goals. So much so that we must deny him the benefit of § 3B1.2(b).

## III.

For the foregoing reasons, the sentence imposed by the district court is vacated and this case remanded to the district court for sentencing consistent with this opinion.